Janet S. CREASON, Plaintiff,

v.

SEABOARD CORPORATION,
Defendant.

No. CIV.A.02–2158–KHV.

United States District Court,
D. Kansas.

June 17, 2003.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Janet S. Creason brings age discrimination and retaliation claims against Seaboard Corporation ("Seaboard") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff also claims that Seaboard breached an implied contract of employment. The matter is before the Court on *Defendant's Motion For Summary Judgment* (Doc. # 50) filed March 21, 2003; *Defendant's Motion To Amend Suggestions In Support Of Motion For Summary Judgment* (Doc. # 54) filed March 25, 2003; and *Defendant's Motion To Strike* (Doc. # 65) filed May 9, 2003. For reasons stated below, the Court sustains all three motions.

### Defendant's Motion To Amend

On March 25, 2003, defendant filed a motion to amend its suggestions in support of its motion for summary judgment. *Defendant's Motion To Amend Suggestions In Support Of Motion For Summary Judgment* (Doc. # 54). The requested amendment, which corrects typographical errors, is unopposed. The Court therefore sustains defendant's motion to amend.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d

1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the non-moving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The non-moving party may not rest on her pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment. *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

The Court may only consider evidence whose content or substance is admissible. *See Conoco Inc. v. J.M. Huber*, 148 F.Supp.2d 1157, 1166 (D.Kan.2001); *see also Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir.1995). "Hearsay testimony that would be inadmissible at trial may not be included." *Conoco*, 148 F.Supp.2d at 1166. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed.R.Evid. 602. Statements not based on personal knowledge must be disregarded. "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995).

### Factual Background

The following facts are either undisputed or, where disputed, construed in the light most favorable to plaintiff.[1]

---

1. D.Kan. Rule 56.1(b) mandates that each disputed or additional fact "refer with particularity to those portions of the record upon which the opposing party relies," and the Court does not consider facts which are not supported by references to the record. Plaintiff's factual statement purports to controvert many of Seaboard's facts but it does not comply with Rule 56.1(b). The record also reveals a recurring problem in plaintiff's presentation of additional facts. The Court's factual statement does not specifically reference all instances of non-compliance, but deems Seaboard's version of the relevant facts to be admitted where supported by record evidence which plaintiff has not property disputed.

From January 4, 1988 to March 30, 2001, plaintiff worked as an executive secretary to Joe Rodrigues, who was an executive vice president at Seaboard. In that capacity, plaintiff managed his correspondence, collected relevant news articles, screened telephone calls, directed social activities, made travel arrangements and acted as a liaison for overseas employees. *Rodrigues Deposition* at 10–12, Exhibit 13 to *Plaintiff's Response To Defendant's Motion For Summary Judgment ("Plaintiff's Response")* (Doc. # 63) filed April 18, 2003.

Plaintiff received a copy of Seaboard's employee handbook, which included policies that prohibit unlawful discrimination. The handbook, and plaintiff's signed acknowledgment, state that employment at Seaboard is at will. Plaintiff was 51 years old when Seaboard terminated her employment on March 30, 2001.

## I. Joe Rodrigues' Retirement

Rodrigues worked with Seaboard's international operations in western Africa and oversaw corporate human resources. He had discussed retirement for several years and on January 14, 2001, he formally announced his retirement. His last day of employment was February 23, 2001. Rodrigues remained on the Seaboard board of directors, but Seaboard did not replace him as executive vice president; it merely reassigned his duties to other senior managers. Specifically, Bob Steer, senior vice president, treasurer and chief financial officer, assumed responsibility for human resources and Steve Bresky, senior vice president of international operations, assumed responsibility for western Africa.

Because of and concurrent with its decision to not replace Rodrigues, Seaboard eliminated plaintiff's position.[2] Steer and Bresky did not have private secretaries who worked solely for them.[3] Steer used Lora Williams and Bresky used Stacy Schmitt—who were departmental administrative assistants—to assist them in performing the duties which Rodrigues had previously performed. When Rodrigues retired and plaintiff's position was eliminated, the positions which supported Steer and Bresky in their additional duties were not open.

## A. Plaintiff's Continued Employment At Seaboard

Rodrigues had assured plaintiff that her job at Seaboard was secure and on one occasion he told her that she had "earned the right to be considered for a position at Seaboard and to continue [her] employment." *Rodrigues Deposition* at 24, Exhibit 13 to *Plaintiff's Response* (Doc.# 63). Around the time that he announced his retirement, Rodrigues asked Steer if he could find a position for plaintiff. Steer, who oversaw the finance department, told Rodrigues that finding a position for plaintiff in the finance department would be "no problem." Because he was going to remain on the board of directors, Rodrigues also talked to Steer about retaining plain-

---

2. Plaintiff purports to controvert this fact by arguing that "although Seaboard did not hire a replacement ... it brought in a parade of younger, cheaper, less experienced employees to take over her job duties in the months after it fired her." *Plaintiff's Response* (Doc. # 63) at 2. Plaintiff's argument does not controvert Seaboard's fact and her record cites do not support her assertions. Because plaintiff has not complied with D. Kan. Rule 56.1, the Court deems Seaboard's fact to be admitted.

3. Plaintiff purports to controvert this fact, arguing that because Steer and Bresky did not have private secretaries, "there is no reason why [she] could not have assumed a similar position as a departmental administrative assistant—unattached to a specific administrator after Mr. Rodrigues' retirement." *Plaintiff's Response* (Doc. # 63) at 2. Plaintiff's argument does not controvert Seaboard's fact. Therefore the Court deems Seaboard's fact to be admitted.

tiff's support for a three-month transition period while she worked in the finance department.

Plaintiff and Rodrigues believed that plaintiff would continue to work at Seaboard after Rodrigues retired.[4] Rodrigues told plaintiff that Steer had assured him that Seaboard would take care of her. Based on his discussion with Steer, Rodrigues discussed the finance position with plaintiff and told her that she would continue to maintain his business contacts.[5] Plaintiff, however, believed that her skills did not fit the finance department. She therefore told Rodrigues that she wanted to keep working in the international area. Rodrigues then asked Bresky to find plaintiff a position in the international area.[6]

## B. Alternative Positions Available To Plaintiff

On January 26, 2001, plaintiff met with Pete Mirakian, director of human resources, and expressed her desire to keep working for whoever replaced Rodrigues. At that time, Seaboard had not decided whether to replace Rodrigues. Mirakian and plaintiff discussed alternative job positions, including positions in the finance and pork divisions.

On February 8, 2001, plaintiff again met with Mirakian. Mirakian told plaintiff that Seaboard was not going to replace Rodrigues and that they needed to look at other opportunities for plaintiff. Mirakian discussed current and anticipated job openings, including jobs as executive administrative assistant in the pork division, assistant scheduler in the pork division and executive administrative assistant in the finance department. During this meeting, plaintiff told Mirakian that it was "pretty clear to her they either wanted to get rid of her or keep her in a lower level position at less salary" and that Seaboard was "currently in a mode to reduce overhead." She believed that Seaboard was "only concerned with the bottom line and reducing overhead and number of employees and [saw] this as a good opportunity to do that." *Creason Deposition* at 240–241, Exhibit B3; *Creason Typewritten Notes* Exhibit K; and *Creason Handwritten Notes* Exhibit J to *Defendant's Suggestions* (Doc. # 51). Mirakian responded by stating "Janet, you're not listening to me; we're trying to find a place for you. [Steer] and [Bresky] want you to stay." *Creason Typewritten Notes* Exhibit K; *Creason Handwritten Notes* Exhibit J.

Plaintiff was insulted at Seaboard's suggestion that she would be interested in the three jobs which Mirakian proposed. To her, they had less desirable duties and pay

---

**4.** Plaintiff claims that Ralph Moss, the company lobbyist in Washington, told her on numerous occasions that when Rodrigues retired, plaintiff would work as Bresky's assistant. According to plaintiff, Moss knew Seaboard's intent because he "is very, very close to Steve Bresky." *Creason Deposition* at 164–65, Exhibit B2 to *Suggestions In Support Of Defendant's Motion For Summary Judgment ("Defendant's Suggestions")* (Doc. # 51) filed March 21, 2003. In 1998, at a celebration that honored plaintiff's tenth anniversary at Seaboard, Bresky asked plaintiff, "you're going to continue to work for another 10 years, aren't you?" *Id.* at 164–66. Bresky never guaranteed plaintiff a job as long as she wanted, however, and he never told her that he

wanted her to work for him when Rodrigues retired. *Id.*

**5.** Rodrigues told his overseas contacts that they could still contact him through plaintiff because she would be working for someone else at Seaboard and support him during the transition.

**6.** Plaintiff does not purport to controvert Seaboard's version of these facts, but she adds supplemental and vague allegations which she does not support with record citations. Plaintiff has again failed to comply with D. Kan. Rule 56.1, and the Court accepts as true Seaboard's statement of such facts.

than her current job.[7] Plaintiff wanted to continue her current job because she felt that it was still necessary, but Seaboard did not agree.

On February 12, 2001, plaintiff informed Mirakian that she was not interested in either position in the pork division. The assistant scheduler position did not appeal to her because she felt that it did not build on her experience and a co-worker had told her that "salesmen yell at you all day long."[8] Plaintiff rejected the executive administrative assistant position because she believed that the job had lower pay and different benefits and holidays than her current position. On February 14, 2001, plaintiff asked what kind of severance she would get if she chose that route. Mirakian discussed plaintiff's options but encouraged her to consider the executive assistant position in the finance department, which he said was the best position that Seaboard had available at that time.[9] *Creason Handwritten Notes* Exhibit J.

On several occasions, plaintiff expressed her desire to keep working as the personal assistant to Rodrigues or whoever took over his duties. She felt that it was necessary to continue her position, especially because Rodrigues had told overseas employees that they would continue to work with her after he retired. *Creason Deposition* at 143–44, Exhibit B2 to *Defendant's Suggestions* (Doc. # 51). Rodrigues, however, testified that when he discussed his retirement with overseas employees, he only stated that plaintiff would be "working for somebody else at Seaboard" and that he had asked for her continued support during the transition. *Rodrigues Deposition* at 13, Exhibit 13 to *Plaintiff's Response* (Doc. # 63).

Plaintiff and Mirakian met again on February 20, 2001. Mirakian kept encouraging plaintiff to consider the finance position and asked her to meet with John Virgo and Dave Oswalt, who were department heads which the position supported.[10]

---

**7.** Seaboard assigns positions to a job level or band which takes into account qualification requirements and job related skills (including experience, education and training) and determines the range of pay. Managers have discretion to decide where in the pay range an employee should fall, based on performance and experience.

 Although Mirakian could have offered plaintiff one of these three jobs without reducing her salary, he never specifically discussed pay before plaintiff rejected the positions.

**8.** Plaintiff asserts that the position was a demotion and that it was not what she was promised. *Plaintiff's Response* (Doc. # 63) at 3. Plaintiff does not cite record evidence that Seaboard promised her a particular position. Further, plaintiff appears to rely on hearsay, which the Court will not consider.

**9.** Plaintiff purports to controvert Seaboard's facts by arguing that it "could have offered [her] a job that allowed her to continue carrying out her responsibilities as an assistant to Bresky or Steer," but that it chose not to. *Plaintiff's Response* (Doc. # 63) at 3. This does

not controvert Seaboard's fact. Further, in her typewritten notes prepared on February 23, 2001, plaintiff acknowledged that Mirakian told her the finance position was the best they had at the time. The Court therefore deems Seaboard's facts to be admitted.

**10.** Plaintiff alleges that on February 21, she met with Rodrigues and asked why Seaboard wanted to get rid of her. Plaintiff testified that Rodrigues responded:

 For one, it's a control thing.... I think Bob Steer is intimidated by you.... Bob's philosophy was that support people were a dime a dozen and that he could hire somebody half the age [at] half the salary, do the same job, train them the way he wanted, and somebody without loyalty and ties to him, meaning Mr. Rodrigues.

*Creason Deposition* at 18, Exhibit B1 to *Defendant's Suggestions* (Doc. # 51). Seaboard denies that Rodrigues made this statement or that it accurately reflects Steer's philosophy. Plaintiff does not know whether Steer actually said what Rodrigues reported. Steer never made similar comments to plaintiff and she

On February 28, 2001, after meeting with Virgo and Oswalt, plaintiff informed Mirakian that she was not interested in the position. Plaintiff believed that it did not require her years of experience or involve work for the same level of people for whom she had been working. Plaintiff also found the job unattractive because of comments that the job was "simply running around and making a lot of copies" and "pandering to 22 people." *Creason Deposition* at 161–62, Exhibit B2 to *Defendant's Suggestions* (Doc. # 51). During her meeting with Mirakian on February 28, plaintiff again asked what would be included in a severance package. Mirakian indicated that Seaboard would likely include job outplacement service and three months of salary plus vacation.

## C. The End Of Plaintiff's Employment With Seaboard

Plaintiff took notes which summarized her various meetings with Seaboard management. None of them suggest that plaintiff complained of age discrimination. Plaintiff consulted with her attorney, however, in late February of 2001 and on March 6, 2001, she sent Mirakian an email which stated:

> One problem I seem to be facing as expressed by Mr. Rodrigues ... is that the people making the decisions feel I am dispensable and can be replaced by a younger person at a much lower salary. I would like to think this is not true and am hopeful we can find a comparable opportunity which will allow me to make use of the knowledge and experience I

never overheard him make such comments to others. Although Steer never ignored plaintiff or made discriminatory statements, he generally did not speak to or acknowledge support people.

Plaintiff purports to controvert Seaboard's facts but again provides no record support.

have gained working for Seaboard the past 13 years, while maintaining similar compensation and benefits.

Exhibit 7 to *Plaintiff's Response* (Doc. # 63). Mirakian talked to Seaboard's general counsel and Steer, then responded to plaintiff later that day:

> Janet, I do not agree with the comments you may have heard from Joe. First off, we are not replacing your position. But is important that you know that we do not pursue a recruiting replacement strategy with emphasis on younger persons at lower salaries. I feel strongly about this, and I regret that you have this mistaken impression.

Exhibit 22 to *Defendant's Suggestions* (Doc. # 51). Plaintiff does not recall whether she further discussed this issue with Mirakian. On March 7, 2001, Mirakian told Rodrigues that plaintiff had turned down the finance job, in addition to the pork division jobs, and asked if he really needed her assistance for three months. Rodrigues assumed that plaintiff had decided to find employment elsewhere and said that he only wanted her through the end of March. *Rodrigues Deposition* at 21–22, Exhibit 13 to *Plaintiff's Response* (Doc. # 63).

Seaboard terminated plaintiff's employment on March 30, 2001. Seaboard paid her three months severance plus accrued vacation. It also offered outplacement service, but plaintiff did not take advantage of it. Plaintiff was eligible for rehire but she did not apply for any openings.

To the extent that plaintiff's evidence is inadmissible hearsay, the Court will not consider it. To the extent that plaintiff offers Rodrigues' comments merely to show that he said these things and that plaintiff believed him, they may be admissible and the Court will consider his comments.

## II. Administrative Assistants At Seaboard

Plaintiff was one of two administrative assistants at her level. The other assistant, Sandra Kazmier, worked for Seaboard's president.[11] Other senior management used departmental secretaries and did not have private executive secretaries. As a personal executive secretary to Rodrigues, plaintiff worked for and reported directly to Rodrigues.[12] Like other administrative assistants at Seaboard, plaintiff occasionally provided back-up assistance to secretaries in other departments when needed.

When plaintiff's employment ended, 33-year-old Lora Williams was the departmental administrative assistant who supported Steer. Seaboard hired Williams on June 12, 2000 to replace Paula Annan.[13] Seaboard had fired Annan, who was over 40 years old, because of unsatisfactory performance.

Stacy Schmitt, who was the departmental administrative assistant who supported Bresky when plaintiff's employment ended, was 29 years old. Schmitt worked for Seaboard from August 14, 2000 until she resigned on November 9, 2001.

## III. Plaintiff's EEOC Charge

On December 21, 2001, plaintiff filed an administrative charge with the Equal Employment Opportunity Commission. Plaintiff alleged age and sex discrimination, as well as retaliation. She did not check the continuing action box, but she checked the retaliation box. In the narrative section, plaintiff stated: "I complained to [Seaboard] in February 2001 that they wanted to either get rid of me or keep me at a lower position and salary.... I believe that I have been discriminated and retaliated against because of my sex, age, and because I complained about the treatment I received, in violation of ... the Age Discrimination in Employment act." *EEOC Charge* Exhibit P to *Defendant's Suggestions* (Doc. # 51). On January 3, 2002, the EEOC issued plaintiff a notice of right to sue letter. *EEOC Letter* Exhibit Q to *Defendant's Suggestions* (Doc. # 51).

Plaintiff filed suit on April 10, 2002, alleging that Seaboard discriminated against her on the basis of age, retaliated when she complained of age discrimination, and breached an implied employment contract by terminating her employment. As to age discrimination, plaintiff alleges that Seaboard (1) treated her less favorably than similarly situated employees who were younger than 40 and (2) terminated her employment. *Pretrial Order* (Doc. # 62) filed April 17, 2003 at 4. Specifically, the pretrial order contends that "[b]eginning in or about January 2001, [plaintiff] was subjected to age discrimination ... culminating in her termination." (Doc. # 62) at 4. The pretrial order does not specifically identify adverse action prior to plaintiff's termination. In her opposition brief, plaintiff argues that Seaboard discriminated against her by keeping younger employees in similar positions while offering plaintiff less desirable jobs at a substantially lower rate of pay. *Plaintiff's Response* (Doc. # 63) at 15. The gravamen of plaintiff's discrimination claim is that Seaboard terminated her employment and—absent any more specific articulation

11. Kazmier was born on July 6, 1944 and was five years older than plaintiff.

12. Plaintiff purports to dispute Seaboard's version of the facts by adding supplemental contentions based on speculation, which her record cites do not support. Because plaintiff

has not complied with D. Kan. Rule 56.1, the Court deems Seaboard's facts to be admitted.

13. Williams worked for Seaboard until August 24, 2001 when she resigned to pursue a graduate degree.

of other adverse employment action—the Court construes the pretrial order as stating only one theory of discrimination.

Plaintiff claims that she had an implied contract of employment with Seaboard. Plaintiff's implied contract claim is based on conversations in which Rodrigues and other upper management told plaintiff that she would have a job after Rodrigues retired.

Seaboard denies plaintiff's claims and argues that it is entitled summary judgment on all claims. With regard to plaintiff's age discrimination claim, Seaboard argues that plaintiff cannot establish a prima facie case because (1) it eliminated plaintiff's position when Rodrigues retired, (2) it did not hire or transfer anyone to plaintiff's position, (3) it did not treat plaintiff less favorably than similarly situated employees outside the protected class, (4) it offered plaintiff three alternative positions, and (5) its decision to eliminate plaintiff's position was nondiscriminatory.

Seaboard also argues that it did not retaliate and that it is entitled to summary judgment because (1) plaintiff did not exhaust her administrative remedies, (2) plaintiff did not engage in protected activity, (3) plaintiff cannot establish adverse employment action contemporaneous to a protected activity, (4) plaintiff cannot show a casual connection between any adverse employment action and a protected activity, and (5) Seaboard had a legitimate, non-retaliatory reason for eliminating plaintiff's position and ending her employment.

Seaboard contends that it is entitled summary judgment on plaintiff's implied contract claim because plaintiff cannot establish mutual intent to contract.

## Analysis

### I. Age Discrimination

The ADEA states that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on her ADEA claim, plaintiff must establish that age was a determining factor in Seaboard's decisions. *See Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 557 (10th Cir.1996) (citing *Lucas v. Dover Corp.,* 857 F.2d 1397, 1400 (10th Cir.1988)). Plaintiff need not show that age was the sole reason for any adverse employment action, but she must show that age "made the difference" in defendant's decisions. *Id.* (quoting *EEOC v. Sperry Corp.,* 852 F.2d 503, 507 (10th Cir.1988)). Plaintiff may meet this burden by direct evidence of age discrimination or by the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1225 (10th Cir.2000); *Wood v. City of Topeka,* 17 Fed.Appx. 765, 767–68 (10th Cir.2001). Seaboard argues that it is entitled to summary judgment because plaintiff cannot establish a prima facie case under *McDonnell Douglas.* Plaintiff argues that *McDonnell Douglas* does not apply because she has direct evidence of discriminatory animus, and that she also has sufficient evidence to establish a prima facie case under *McDonnell Douglas. Plaintiff's Response* (Doc. # 63) at 11, 14.

### A. Direct Evidence Of Discrimination

Direct evidence, though rare, consists of "proof of an existing policy which itself constitutes discrimination," *Mosley v. Pena,* 100 F.3d 1515, 1519 (10th Cir.1996), or statements which on their face show that defendant "acted on [its] discriminato-

ry beliefs." *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir. 1990), *cert. denied,* 506 U.S. 907, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992); *see Carney v. Pena,* 992 F.Supp. 1285, 1290 (D.Kan. 1998). "Statements which on their face are expressions of personal opinion, however, can only support an inference of discrimination if the trier of fact finds the inference reasonable, and so constitute only circumstantial or indirect evidence of discrimination against the plaintiff." *Mosley,* 100 F.3d at 1519–20 (quoting *Ramsey,* 907 F.2d at 1008).

Plaintiff has not presented direct evidence of age discrimination. She does not point to any express policy. She relies on actions and statements, but on their face they do not show that Seaboard acted on discriminatory beliefs. Plaintiff's theory is that Bresky and Steer agreed to hire her after Rodrigues retired—but that they instead opted to hire "younger, cheaper, less experienced" employees to perform her job responsibilities.[14] Plaintiff argues that Steer was well known for hiring employees "half the age for half the salary."

The record does not support plaintiff's assertions. Plaintiff's testimony is that according to Rodrigues, Steer's "philosophy was that support people were a dime a dozen and that he could hire somebody half the age [at] half the salary." *Creason Deposition* at 18, Exhibit B1 to *Defendant's Suggestions* (Doc. # 51). Plaintiff also cites the fact that in April of 2002, Steer referred to a new administrative assistant as a "good young woman." *Plaintiff's Response* (Doc. # 63) at 13. This statement, made over a year after plaintiff's employment ended, does not relate to

plaintiff's claim of discrimination, nor does it constitute direct evidence of discrimination. The Court therefore evaluates plaintiff's claim under *McDonnell Douglas.*

### B. *McDonnell Douglas* Burden-Shifting Approach

Under *McDonnell Douglas,* plaintiff initially bears the burden of production to establish a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. If plaintiff establishes a prima facie case, the burden shifts to Seaboard to articulate a facially nondiscriminatory reason for its actions. *See Reynolds v. Sch. Dist. No. 1,* 69 F.3d 1523, 1533 (10th Cir.1995). If Seaboard articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a reasonable jury might conclude that Seaboard's proffered reason is pretextual, that is, "unworthy of belief." *Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)).

### 1. Prima Facie Case

██ Generally, to establish a prima facie case of age discrimination in termination from employment, plaintiff must show: (1) she was a member of the protected age group, over age 40; (2) she was performing satisfactorily; (3) Seaboard terminated her employment; and (4) she was replaced by a younger person. *BUI v. IBP, Inc.,* 171 F.Supp.2d 1168, 1173 (D.Kan.2001) *aff'd* 34 Fed.Appx. 353 (10th Cir.2002). This test has been modified in a reduction-in-force context because the discharged employee is not always replaced with another employee. Thus,

---

**14.** The record shows that Seaboard did not hire anybody to do plaintiff's work when it eliminated her position. Plaintiff's theory is that because Steer and Bresky took over Rodrigues' responsibilities, Williams and Schmitt took over her responsibilities, and that Sea-

board hired younger employees on August 24, 2001 when Williams resigned and on November 9, 2001 when Schmitt resigned. Both of these hirings took place after plaintiff's termination, and plaintiff had not applied for either opening.

courts have modified the fourth element by requiring plaintiff to "produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Lucas v. Dover Corp., Norris Div.,* 857 F.2d 1397, 1400 (10th Cir.1988) (alteration in original) (quoting *Branson v. Price River Coal Co.,* 853 F.2d 768, 771 (10th Cir. 1988)). Because Seaboard eliminated plaintiff's position, this modified fourth element is applicable. Of the four elements on her termination claim, the only one that Seaboard contests is the fourth.

The fourth element may be established through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force. *See Carter v. Newman Mem'l County Hosp.* 49 Fed.Appx. 243, 245 (10th Cir.2002); *Ingels v. Thiokol Corp.,* 42 F.3d 616, 621 (10th Cir.1994). "Evidence that an employer fired qualified older employees but retained younger ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent." *Branson,* 853 F.2d at 771.

Plaintiff makes no allegation that anyone replaced her, but she argues that Seaboard discriminated against her by deciding to keep younger employees in similar positions and terminating her employment when she declined less desirable jobs at a substantially lower rates of pay. Seaboard claims that it eliminated plaintiff's position and that it did not treat plaintiff less favorably than similarly situated employees.

■ Plaintiff does not purport to identify other employees who were similarly situated, to state how they were similarly situated or to establish their ages. She only claims that Seaboard kept younger employees as administrative assistants for Steer and Bresky, apparently claiming that these employees are similarly situated. An employee is similarly situated to

plaintiff if the employee deals with the same supervisor and is subject to the "same standards governing performance evaluation and discipline." *Kendrick,* 220 F.3d at 1232 (quoting *Aramburu,* 112 F.3d at 1404). In determining whether employees are similarly situated, a court compares relevant employment circumstances such as work history and company policies. *Id.*

■ The record indicates that Williams and Schmitt, the administrative assistants for Steer and Bresky, did not support Rodrigues or any other single executive; they each supported several people. Plaintiff has no personal knowledge about their job duties, and the record contains no evidence whether they were subject to the same performance evaluations and disciplinary standards as plaintiff. The record indicates that Kazmier is the only employee who may have been similarly situated to plaintiff. Kazmier was the only other personal executive assistant at Seaboard and she was five years older than plaintiff.

Under these circumstances, plaintiff has not shown that Seaboard treated her less favorably than similarly situated employees under age 40 in its decision to terminate her employment. Because plaintiff has not otherwise established a prima facie case of discrimination, Seaboard is entitled to summary judgment on plaintiff's age discrimination claim.

**2. Legitimate Nondiscriminatory Reason Or Pretext**

■ Even if plaintiff established a prima facie case, she has presented insufficient evidence that Seaboard's stated reason for termination was a pretext for age discrimination. Seaboard asserts that it terminated plaintiff's employment because it eliminated her position when Rodrigues retired and she refused to take any of three available positions in other depart-

ments. Seaboard also cites a business decision not to create a new position for plaintiff. If true, these would be legitimate nondiscriminatory reasons. *See, e.g., Selenke v. Med. Imaging of Colo.,* 248 F.3d 1249, 1261 (10th Cir.2001) (courts should not "second guess" employer's business judgment). The burden therefore shifts to plaintiff to demonstrate that age was a determining factor in Seaboard's decisions. To meet this burden, plaintiff must establish by a preponderance of the evidence "that the proffered reason was not the true reason for the employment decision." *Greene,* 98 F.3d at 558. Plaintiff may show pretext by establishing either that a discriminatory reason more likely motivated Seaboard or that its explanations are unworthy of credence. *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994).

Plaintiff does not deny that Seaboard eliminated her position because Rodrigues retired, or dispute Seaboard's claim that she declined the three available positions. She argues that Seaboard's reasons are nonetheless a pretext for age discrimination because (1) it could have "reabsorbed" her into the administrative pool which supported upper management or created a new position for her as administrative assistant to Steer or Bresky; (2) it only offered her positions which entailed significantly different job duties and less pay; and (3) Mirakian, Steer and Bresky "cannot even get their stories straight with respect to who made the decision to fire [her]." *Plaintiff's Response* (Doc. # 63) at 16–17. These arguments do not create a genuine issue of material fact as to pretext.

Plaintiff provides no evidence that the administrative pool had openings, or that Seaboard had a duty or practice of creating new jobs for employees whose positions were eliminated. In theory, Seaboard could have created a new job for plaintiff—but employers are not required to acquiesce to the desires of their employees, especially when it comes to the employee's job or job description. *Simms v. Blue Cross Blue Shield Ass'n,* 2003 WL 1877639, at *9–10 (N.D.Ill. Apr.14, 2003). The record contains no evidence that Seaboard's refusal to create a new position or "reabsorb" plaintiff in the administrative pool was a pretext for discrimination. Seaboard is therefore entitled to summary judgment on plaintiff's age discrimination claim.

## II. Retaliation For Exercising Rights Under The ADEA

Plaintiff claims that Seaboard terminated her employment because she complained of age discrimination. As to retaliation, the pretrial order contends that (1) on February 8, 2001, plaintiff complained to Mirakian that Seaboard wanted to get rid or her or keep her in a lower level position at less salary; (2) on February 21, 2001, plaintiff complained to Rodrigues about how Seaboard was treating her; and (3) on March 6, 2001, plaintiff sent Mirakian an email which stated that "the people making the decisions feel I am dispensable and can be replaced by a younger person at a much lower salary." (Doc. # 62) filed April 17, 2003 at 5–6. In opposing defendant's motion for summary judgment, however, plaintiff only claims that her email to Mirakian constituted protected activity. (Doc. # 63) at 20. Seaboard argues it is entitled summary judgment on this claim because plaintiff has not exhausted administrative remedies, because she is jurisdictionally barred from proceeding and because she cannot establish a prima facie case of retaliation.

### A. Jurisdiction

 Plaintiff's EEOC charge alleged that Seaboard retaliated after she "com-

plained to [Seaboard] in February 2001 that they wanted to either get rid of [her] or keep [her] at a lower position and salary." Seaboard contends that because the EEOC charge did not mention protected activity on March 6, 2001, plaintiff's retaliation claim is barred. Plaintiff argues that her narrative, along with her check in the "retaliation" box, gave Seaboard sufficient notice of her retaliation claim.

Congress has established various administrative remedies which plaintiffs must exhaust before filing suit in federal court. The ADEA mandates that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge" has been filed with the EEOC. 29 U.S.C. § 626(d). Exhaustion of administrative remedies is a jurisdictional prerequisite. *See Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir.1996). In Kansas, age discrimination is statutorily prohibited. K.S.A. §§ 44–1111 *et seq.* The ADEA therefore requires that plaintiff file her EEOC charge within 300 days of the alleged discrimination. 29 U.S.C. §§ 626(d)(2), 633(b).

Generally, a plaintiff may not bring a claim unless it was part of the timely-filed administrative charge for which she has received a right-to-sue letter. *Wallace v. Beech Aircraft Corp.*, 87 F.Supp.2d 1138, 1145–46 (D.Kan.2000) (citing *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied* 528 U.S. 815, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999)). The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," *id.* § 1601.12(b). The charge tells the EEOC what to investigate, provides it the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation. *See Seymore*, 111 F.3d at 799; *Albano v. Schering–Plough*

*Corp.*, 912 F.2d 384, 388 (9th Cir.1990) (EEOC charge serves primarily as impetus to EEOC investigation and conciliation); 29 C.F.R. § 1601.14(a) (requiring EEOC generally to send copy of charge to charged party or respondent within ten days of its filing); *cf. EEOC v. Shell Oil Co.*, 466 U.S. 54, 64, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) ("EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence relevant to the charge under investigation.") (footnote and quotation omitted). The Court liberally construes charges filed with the EEOC. "The crucial inquiry is whether the claims set forth in the civil complaint fall within the scope of the investigation that could reasonably be expected to grow out of the EEOC charges." *Harrell*, 957 F.Supp. at 1219.

The exhaustion requirement serves two purposes: to give notice of the alleged violation to the charged party and to give the EEOC an opportunity to conciliate the claim. *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir.1994). "Allowing a complaint to encompass allegations outside the ambit of the predicate charge would circumvent the administrative agency's investigatory and conciliatory role as well as deprive the charged party [of] notice of the charge." *Harrell v. Spangler, Inc.*, 957 F.Supp. 1215, 1219 (D.Kan.1997) (quoting *Jensen v. Bd. of County Comm'rs*, 636 F.Supp. 293, 298 (D.Kan.1986)). The Tenth Circuit has adopted a limited exception to the exhaustion rule for acts which are reasonably related to those listed in the EEOC charge. *Jones v. Denver Post Corp.*, 203 F.3d 748, 755 (10th Cir.2000) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir.1997)). "[W]here a retaliatory act occurs prior to the filing of

a charge and the employee fails to allege the retaliatory act or retaliation claim in the subsequent charge, the retaliatory act ordinarily will not reasonably relate to the charge." *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir.1997), *cert. denied* 522 U.S. 935, 118 S.Ct. 342, 139 L.Ed.2d 266 (1997).

Here, Seaboard terminated plaintiff's employment on March 30, 2001. Nearly nine months later, on December 21, 2001, plaintiff filed an EEOC charge against Seaboard, alleging sex and age discrimination and retaliation. The EEOC charge did not specifically include her email to Mirakian on March 6, 2001, but it did allege retaliation (plaintiff checked the box labeled "retaliation") and both Seaboard and the EEOC could have anticipated this claim, since plaintiff's email stated that "the people making the decisions feel I am dispensable and can be replaced by a younger person at a much lower salary." Exhibit 7 to *Plaintiff's Response* (Doc. # 63). The retaliation claim in this case would reasonably be expected to grow out of any investigation into plaintiff's EEOC charge. The Court therefore finds that plaintiff has exhausted administrative remedies with respect to her retaliation claim and that the Court has jurisdiction to consider it.

### B. Prima Facie Case Of Retaliation Under The ADEA

The ADEA prohibits an employer from discriminating against an employee because that employee "has opposed any practice made unlawful" by the ADEA. 29 U.S.C. § 623(d); *see also Verstraete v. Farmers Ins. Co., Inc.,* 1994 WL 373890, at *3 (D.Kan.1994). *McDonnell Douglas* applies to retaliation claims. *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 896

---

**15.** The Court applies the same general standards of proof to ADEA retaliation claims as it does to Title VII retaliation claims. *See*

---

(10th Cir.1994); *Boyd v. Telecable of Overland Park, Inc.,* 752 F.Supp. 388 (D.Kan. 1990). Under this approach, if plaintiff establishes a prima facie case of retaliation, the burden shifts to Seaboard to articulate a legitimate nondiscriminatory reason for the adverse action. Once Seaboard states a legitimate reason for its action, plaintiff can prevail only by demonstrating that the articulated reason was merely pretext. *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1394 (10th Cir.1997).

■ To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to age discrimination; (2) after or contemporaneously with such opposition, Seaboard took adverse action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.[15] *Zinke v. Slater,* 34 Fed.Appx. 667, 673 (10th Cir.2002); *see also Smith v. Bd. of County Comm'rs of Johnson County, Kan.,* 96 F.Supp.2d 1177, 1192 (D.Kan. 2000) (citing *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993)); *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 634 (10th Cir.1988); *Meredith,* 18 F.3d at 896 (applied in case alleging retaliation under Title VII).

■ Seaboard argues that it is entitled to summary judgment because (1) plaintiff did not sufficiently convey a reasonable and good faith concern that Seaboard was acting in an unlawful manner; (2) plaintiff cannot establish adverse action contemporaneous with or subsequent to a protected activity; (3) plaintiff cannot establish a causal connection; and (4) even if plaintiff can establish a prima facie case, she has no evidence that the stated reason for termination was false.

---

*Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 634 (10th Cir.1988).

## 1. Protected Opposition

Plaintiff argues that her email to Mirakian on March 6, 2001 was an informal complaint which expressly set forth her dissatisfaction with Seaboard and attributed her mistreatment to age. As noted above, plaintiff's email stated as follows:

> One problem I seem to be facing as expressed by Mr. Rodrigues ... is that the people making the decisions feel I am dispensable and can be replaced by a younger person at a much lower salary. I would like to think this is not true and am hopeful we can find a comparable opportunity which will allow me to make use of the knowledge and experience I have gained working for Seaboard the past 13 years, while maintaining similar compensation and benefits.

Exhibit 7 to *Plaintiff's Response* (Doc. # 63). Seaboard argues that plaintiff's email did not convey a reasonable and good faith concern that Seaboard was acting in an unlawfully discriminatory manner. Plaintiff responds that Seaboard knew that she was concerned about age discrimination and that its knowledge is evidenced by the facts that (1) Mirakian discussed his proposed response with corporate counsel before answering plaintiff's email, and (2) Seaboard offered plaintiff a severance package conditioned on a release of claims against Seaboard.

The ADEA makes it unlawful for an employer to discriminate against any employee because that individual "has opposed any practice made unlawful" by the ADEA. 29 U.S.C. § 623(d). To establish protected opposition, plaintiff need not prove actionable discrimination. *Plakio v. Congregational Home, Inc.*, 902 F.Supp. 1383, 1392 (D.Kan.1995). She only must show that her opposition derived from a good faith, reasonable belief that Seaboard had subjected her to discrimination. *Id.* Plaintiff's burden under this standard has subjective and objective components:

plaintiff must show that (1) she had a subjective good faith belief that Seaboard had engaged in unlawful discrimination and (2) her belief was objectively reasonable in light of the facts and record presented. *See Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997) (plaintiff must do more than allege honest and bona fide belief; allegations and record must indicate belief, though perhaps mistaken, was objectively reasonable); *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir.1998) (courts assess reasonableness of plaintiff's belief in light of totality of circumstances).

Congress intended ADEA § 623(d) "to protect a wide range of activity in addition to the filing of a formal complaint." *Whitten v. Farmland Indus., Inc.*, 759 F.Supp. 1522, 1538 (D.Kan.1991). At one end of the spectrum, it is well established that an employee's express complaints to supervisors about perceived discriminatory practices constitute protected activity. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *Cobb v. Anheuser Busch, Inc.*, 793 F.Supp. 1457, 1490 (E.D.Mo.1990). On the other hand, protected activity does not include opposition which relates not to unlawful employment practices but to a personal grievance. *See Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 985 (10th Cir.1991); *Aldridge v. Tougaloo Coll.*, 847 F.Supp. 480, 484 (S.D.Miss.1994); *E.E.O.C. v. MCI Telecomm. Corp.*, 820 F.Supp. 300, 308 (S.D.Tex.1993); *Kauffman v. Kent State Univ.*, 815 F.Supp. 1077, 1084 n. 3 (N.D.Ohio 1993), *aff'd*, 21 F.3d 428, 1994 WL 112874 (6th Cir.1994). While some courts have indicated that vague references to unspecified discrimination are not protected, no clear rule has emerged as to the level of specificity required, and the standard which most courts have employed

is not exacting. *Compare Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir.1989) (allegation of "ethnocism" insufficient) *with Grant v. Hazelett Strip–Casting Corp.*, 880 F.2d 1564, 1567–70 (2d Cir.1989) (mock memo listing age and gender qualifications for certain position sufficient); *Truskoski v. ESPN, Inc.*, 823 F.Supp. 1007, 1012 (D.Conn.1993) (complaints about disparate impact of staffing policy had "overtones of gender bias and discrimination"). Informal complaints to superiors may constitute protected activity. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001) (citations omitted).

Here, as noted, plaintiff complained to Mirakian when she sent him an email which stated:

> One problem I seem to be facing as expressed by Mr. Rodrigues ... is that the people making the decisions feel I am dispensable and can· be replaced by a younger person at a much lower salary. I would like to think this is not true and am hopeful we can find a comparable opportunity which will allow me to make use of the knowledge and experience I have gained working for Seaboard the past 13 years, while maintaining similar compensation and benefits.

Exhibit 7 in *Plaintiff's Response* (Doc. # 63). Employees often do not speak with the clarity or precision of lawyers, and the Court discerns no evidence that Congress intended to protect only the articulate. The relevant question, then, is not whether plaintiff made a formal accusation of discrimination but whether her communication sufficiently conveyed a reasonable concern that Seaboard had acted or was acting in an unlawful discriminatory manner.

Based on her conversation with Rodrigues, plaintiff reasonably could have believed that Steer was discriminating against her on the basis of age.[16] Thus, the record reveals a genuine issue of material fact whether plaintiff's email sufficiently conveyed her concerns about the possible unlawfulness of Seaboard's conduct under the ADEA. Seaboard is not entitled to summary judgment on this issue.

### 2. Adverse Action And Causal Connection

Seaboard claims that it is entitled to summary judgment because plaintiff cannot establish a causal connection between her protected opposition on March 6, 2001 and the termination of her employment on March 30, 2001. The causal connection element requires plaintiff to establish that the protected opposition and adverse action are not wholly unrelated, *Whitten v. Farmland Indus., Inc.*, 759 F.Supp. 1522, 1539 n. 18 (D.Kan.1991), and such an inference is permissible where the adverse action closely follows the protected activity, see *Burrus v. United Tel. Co. of Kan.*, 683 F.2d 339, 343 (10th Cir.1982), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

While Seaboard terminated plaintiff's employment only three weeks after it received her email, Seaboard had decided to eliminate plaintiff's position in early February of 2001. It so informed her on

---

**16.** Plaintiff testified that Rodrigues said to her:

> For one, it's a control thing.... I think Bob Steer is intimidated by you.... Bob's philosophy was that support people were a dime a dozen and that he could hire somebody half the age [at] half the salary, do the same job, train them the way he wanted,

and somebody without loyalty and ties to him, meaning Mr. Rodrigues.

*Creason Deposition* at 18, Exhibit B1 in *Defendant's Memorandum* (Doc. # 51). Rodrigues' comments would not be hearsay if offered only to show that he said these things to plaintiff and that she believed them.

February 8, 2001—a full month before plaintiff sent her email. As a matter of law, plaintiff's email was not the cause of Seaboard's decision to eliminate her position. *See Hooven–Lewis v. Caldera,* 249 F.3d 259, 274 (4th Cir.2001).[17] Once that decision was made, plaintiff's termination was a foregone conclusion unless she accepted another position which she did not. Plaintiff has not made out a prima facie case of retaliation under the ADEA and the Court therefore sustains Seaboard's motion for summary judgment on this claim.

### III. Breach Of Employment Contract

Plaintiff claims that before Rodrigues retired, he told her that her work for Seaboard would need to continue and that because of her years of service, she had earned the opportunity to do it. *Pretrial Order* (Doc. # 62) at 5. Plaintiff claims that these promises created an implied contract of employment and that Seaboard breached these promises when it terminated her employment. *Id.* Seaboard denies any implied contract of employment, and argues that it is entitled summary judgment because the record contains no evidence of mutual intent to contract. *Defendant's Memorandum* (Doc. # 51) at 32.

■ Absent an express or implied contract, Kansas law presumes employment to be at will. *Nguyen v. IBP, Inc.,* 905 F.Supp. 1471, 1486 (D.Kan.1995); *Inscho v. Exide Corp.,* 29 Kan.App.2d 892, 895, 33 P.3d 249, 252 (2001). The existence of an implied contract of employment depends on the mutual intent of the parties, as shown by their acts, circumstances and the inferences reasonably drawn therefrom:

Where it is alleged that an employment contract is one to be based upon the theory of "implied in fact," the understanding and intent of the parties is to be ascertained from several factors which include written and oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship; the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time the employment contract commenced.

*Morriss v. Coleman Co.,* 241 Kan. 501, 513, 738 P.2d 841 (1987) (citation omitted); *see also Inscho,* 29 Kan.App.2d at 897, 33 P.3d at 252.

The parties must have a mutual intent to enter into an employment contract; plaintiff's unilateral expectations of continued employment are insufficient to create a contract. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1492 (10th Cir.1995) *cert. denied,* 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996); *Harris v. Bd. of Pub. Util.,* 757 F.Supp. 1185, 1190 (D.Kan. 1991). Intent is ordinarily a question of fact, so the existence of an implied contract is usually a matter reserved for a jury's determination. *Nguyen,* 905 F.Supp. at 1486–87. Summary judgment may be appropriate, however, when the alleged implied contract is based solely on plaintiff's unilateral expectation of continued employment, *id.,* or "when the evidence shows no liability as a matter of law and where the essential facts are not in dispute." *Kast-*

---

**17.** Plaintiff argues that Seaboard retaliated by not changing its prior decision to eliminate her position, but she provides no legal authority or evidence which suggests that Seaboard was obligated to reconsider or did reconsider

its decision. She also argues that Seaboard retaliated by not offering positions which opened after she left Seaboard, but she did not apply for any such openings and plaintiff has not alleged a claim for failure to rehire.

*ner v. Blue Cross & Blue Shield of Kan.,* 21 Kan.App.2d 16, 24, 894 P.2d 909 (1995).

■ Plaintiff argues that she had an implied contract for continued employment because she worked for Seaboard for 13 years; she was loyal, dedicated and valued; Rodrigues orally assured her that her job was secure; and other management employees ratified his decision by words and conduct. *Plaintiff's Response* (Doc. # 63) at 21. Plaintiff does not specify whether the alleged implied contract was for continued employment in the same position, a comparable position or a different position. Nor does she identify any fixed period for which Seaboard agreed to continue her employment. Seaboard therefore argues that as a matter of law, plaintiff's employment was at will, that it did not promise continued employment and that plaintiff's testimony does not demonstrate mutual intent to contract.

Although Rodrigues assured plaintiff that Seaboard would have no problem finding her a position, the record does not support plaintiff's assertion that he guaranteed continued employment for any period of time or in any particular position. Likewise, the record contains no evidence that Seaboard management ratified his alleged guarantee. Plaintiff has presented no evidence of contractual negotiations, expressed intent by either party to alter the at will relationship, industry practice, conduct of the parties or any other circumstance that would make clear the parties' intent to change her at will relationship with Seaboard. Plaintiff testified that Rodrigues told her that he felt she "had deserved and earned the right to continue doing the work and that he was going to make that recommendation." *Creason Deposition* at 174, Exhibit B2 to *Defendant's Suggestions* (Doc. # 51). Still, the record does not indicate that Rodrigues promised continued employment or that he had the authority to do so. Plaintiff's evidence would not persuade a reasonable jury that she had an enforceable contract of employment with Seaboard. Seaboard is therefore entitled to summary judgment on plaintiff's implied contract claim.

### Defendant's Motion To Strike

On May 5, 2003, plaintiff's counsel sent the Court a letter which cited and attached two Tenth Circuit opinions and explained that "the issues before the Court in these cases are applicable to the issues pending before the Court with respect to the defendant's Motion for Summary Judgment." The cases were decided on June 12, 2002 and September 25, 2002—many months before plaintiff filed her response brief. On May 9, 2003, Seaboard filed a motion to strike the letter, arguing that it amounted to a surreply for which plaintiff had not obtained leave of Court.

The Court is bound by Tenth Circuit authority—whether or not a party has cited it. Here, plaintiff's cases are not directly on point and they would not influence the outcome of plaintiff's claims. More to the point, they should have been cited (if at all) in plaintiff's summary judgment brief. Defendant's motion to strike is therefore sustained.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 50) filed March 21, 2003, be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that *Defendant's Motion To Amend Suggestions In Support Of Motion For Summary Judgment* (Doc. # 54) filed March 25, 2003, be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that *Defendant's Motion To Strike* (Doc. # 65) filed May 9, 2003, be and hereby is **SUSTAINED.**