**Rosetta HILL, Plaintiff,**

v.

**WHEATLAND WATERS, INC., Defendant.**

**No. CIV.A. 03–2354KHV.**

United States District Court, D. Kansas.

July 28, 2004.

Frank B. W. McCollum, Stacy M. Bunck, McCollum & Parks, L.C., Kansas City, MO, for Plaintiff.

James J. Cramer, Payne & Jones, Chtd., Overland Park, KS, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff alleges that defendant Wheatland Waters, Inc., ("Wheatland") terminated her employment because of race and/or national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, 42 U.S.C. § 1981, and the Kansas Act Against Discrimination ("KAAD"), K.S.A. § 44–1009. This matter is before the Court on *Defendant's Motion For Summary Judgment* (Doc. # 41) filed March 31, 2004 and *Plaintiff's Motion For Sanctions Against Defendant* (Doc. # 47) filed May 19, 2004. For reasons stated below, the Court finds that defendant's motion should be sustained in part and that plaintiff's motion should be overruled.

## *Factual Background*

The following facts are either undisputed or, where disputed, construed in the light most favorable to plaintiff.

Wheatland operates a bottled water business. On April 1, 2002, Connie Rishworth, its chief executive officer, hired plaintiff as the only employee in the Human Resources Department. Plaintiff's position title was "HR and Administrative." Plaintiff is a female of African-American descent. When plaintiff began work, defendant had nine employees in the "front office," including one other African-American, Frederick Banks. Banks began work at Wheatland in March of 2002, and resigned several months later, in early June of 2002.

Plaintiff's job responsibilities included completing paper work for new employees, conducting exit interviews, tracking employee reviews, processing liability and workers compensation claims, administering employee benefit programs (401K and health, life and dental insurance), tracking safety meetings and Department of Transportation logs, updating manuals, producing a monthly newsletter and implementing employee incentives.[1] Plaintiff also performed administrative tasks including back-up for the front desk and support to the chief operating officer and operations manager.

In June of 2002, seven of defendant's 75 employees were African-American. That month, Rishworth determined that "due to a downward trend in overall sales and an upward trend in operating costs, a reduction in staff (and corresponding savings in

---

1. Before defendant hired plaintiff, these human resources duties had been distributed among several front office employees.

labor expenses) was necessary to maintain the financial stability of the company." After meeting with upper-level managers, Rishworth decided to "eliminate positions throughout the company's hierarchy—including positions high up on the company's organizational chart." *Rishworth Affidavit of March 29, 2004* at 2, Exhibit B to *Defendant's Suggestions in Support Of Its Motion For Summary Judgment* (Doc. # 42) filed March 31, 2004. Rishworth decided to eliminate positions which involved duties that remaining employees could most easily absorb. Based on this plan, Rishworth decided not to fill two vacant service positions. On June 17, 2002, Rishworth also eliminated the commercial sales position of David Keibel and terminated his employment.

Although plaintiff satisfactorily performed her job, Rishworth also decided to eliminate her position and terminate her employment. In deciding to fire plaintiff rather than another office employee, Rishworth reasoned that plaintiff would not be a candidate for any other office position since her background was almost entirely in human resources. On June 18, 2002, Linda Dodson (who apparently was plaintiff's supervisor) told plaintiff that defendant was laying her off due to budget constraints and downsizing. Plaintiff did not know that management had decided to downsize, and she thought that because she was the Human Resources director, management would have discussed with her any planned reduction in force. Plain-

tiff asked Dodson for documentation about the downsizing, but Dodson refused. Defendant did not terminate any other employees on June 18, 2002.[2]

After June of 2002, Rishworth eliminated four other positions throughout the company, all of which were occupied by Caucasians: John Davis, operations manager with four years tenure, on August 1, 2002; Jason Bonewits, plant manager with two years tenure, on February 14, 2003; and Marvin Kelly, route manager with ten years tenure, on April 30, 2003. Defendant also terminated Kevin Gilliland, inventory control employee with six months tenure, on May 10, 2003.[3]

■ In its reply brief, defendant for the first time provided the dates for the foregoing terminations. *See Defendant's Reply Suggestions In Support Of Summary Judgment* (Doc. # 46) filed May 13, 2004, at 41.[4] These dates were based on supplemental disclosures (WW170 and WW171) which defendant made on May 13, 2004, when it filed its reply brief. Under Rule 37(c)(1), Fed.R.Civ.P., plaintiff has filed a motion to strike all evidence of the termination dates of Davis, Bonewits, Kelly and Gilliland. Plaintiff asserts that defendant should have produced documentary evidence of the termination dates in response to her request for "all documents relating to the June 2002 restructuring." Plaintiff notes that even if her discovery request did not cover the supplemental disclosures, the *Scheduling Order* (Doc. # 10) filed Oc-

---

2. Plaintiff does not believe that defendant reduced its work force at all and, although she cannot think of any other employment incident in which race was an issue, (Hill Depo., Ex. A, at 57–58, 98), she believes that defendant terminated her employment because of race. Defendant hired plaintiff and Banks, the only other African American in the front office, within a month of each other. Plaintiff therefore believed that when defendant hired her, it was trying to diversify.

3. Defendant hired Gilliland after it allegedly decided to effectuate the reduction in force. Gilliland was apparently hired to fill a vacancy created when another employee left the company. He occupied the position for only six months before defendant eliminated it.

4. According to plaintiff, the initial Rishworth affidavit suggests that defendant fired all five of the white males in June of 2002. In fact, the affidavit does not contain any termination dates.

tober 28, 2003, required defendant to produce WW170 and WW171 as evidence supporting its position. Plaintiff asks that the Court prohibit defendant from citing the dates of the four terminations, strike all argument based on those dates, and grant plaintiff reasonable attorneys fees resulting from defendant's failure to comply with the scheduling order and failure to respond to plaintiff's discovery requests.

In seeking Rule 37 sanctions, plaintiff did not comply with the local rule which requires a certification of consultation.[5] Furthermore, plaintiff herself seems to rely on WW170 and WW171 as evidence that defendant did not terminate these four employees during a reduction in force ("RIF"). The Court therefore finds that plaintiff's motion for sanctions should be overruled.

Between April and December of 2002, plaintiff hired 43 employees (including Gilliland); 39 of those employees (including Gilliland) replaced employees who had left the company and four were hired into commission-only sales positions.[6] Between March of 2002 and January of 2003, defendant increased the pay of 25 employees, with raises ranging from $.26 to $.80 per

hour for hourly employees and $814.00 to $6,346.00 per year for salaried employees.[7] From June of 2002 to June of 2003, despite these raises, defendant reduced its bimonthly payroll from $67,785.46 to $54,985.32. During that same period, defendant reduced the number of employees from 75 to 52.[8]

After it terminated plaintiff, defendant assigned her duties to four remaining employees, all of whom are Caucasian: Linda Dodson assumed many human resources duties, Cambre Sovereign assumed employee benefit duties, and Heather McMillan and Candice Rishworth assumed plaintiff's administrative duties.

On the day defendant terminated her employment, plaintiff copied and took confidential company documents (including pay history sheets and employment applications) because she thought they would help her prove that defendant had no RIF. Defendant's employee handbook provided that misusing privileged or confidential information without prior authorization justified discipline up to and including termination. At her deposition, plaintiff acknowledged that copying confidential

---

5. D. Kan. Rule 37.2 provides as follows:

 The court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R.Civ.P. 26 through 37, or a motion to quash or modify a subpoena pursuant to Fed.R.Civ.P. 45(c), unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion. Every certification required by Fed.R.Civ.P. 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes shall describe with particularity the steps taken by all counsel to resolve the issues in dispute. A "reasonable effort to confer" means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so.

6. Defendant's reply brief first presented evidence of these facts. On July 13, 2004, the Court ordered plaintiff to show cause in writing on or before July 23, 2004 why the Court should not grant summary judgment based in part on the materials in defendant's reply. In response to the Court's order to show cause, plaintiff did not controvert any of the facts which defendant first introduced in its reply brief.

7. In 2002, defendant also started a service award program (with a yearly cost of just over $800.00), painted the front office and added different furniture and a rug.

8. For the most part, this reduction was due to attrition. The record identifies only six employees who were terminated because their positions were eliminated: plaintiff and five white males.

employee information for personal use was cause for termination. She has not disclosed any information in the documents, except to her attorneys and opposing counsel. Rishworth would have fired plaintiff when she learned that plaintiff copied and removed confidential employee information for personal use. Defendant asserts that it became aware that plaintiff possessed confidential company documents on February 11, 2003, when it received plaintiff's detailed EEOC charge. On October 31, 2003, plaintiff's counsel gave defendant certain employee evaluations, job postings and job applications which plaintiff had taken. In February of 2004, plaintiff's counsel gave defendant certain employee lists with rates of pay, review dates and handwritten notes which plaintiff had also taken.

Plaintiff asserts that in terminating her employment, defendant discriminated against her on account of race and national origin in violation of Title VII, 42 U.S.C. § 1981 and K.S.A. § 44–1009. The parties agree that the identical analysis applies to plaintiff's race and national origin claims under all theories of recovery. Defendant contends that it is entitled to summary judgment because (1) plaintiff cannot establish a prima facie case of race or national origin discrimination; (2) defendant had a legitimate nondiscriminatory reason for terminating plaintiff; and (3) plaintiff has no evidence that the stated reason for termination is a pretext for discrimination. Alternatively, defendant asserts that it is entitled to partial summary judgment on plaintiff's claims for back pay because it would have fired plaintiff when it learned that she had violated company policy by taking confidential records.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir.1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing summary judgment. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on

ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### Analysis

### A. Race And National Origin Discrimination

Plaintiff asserts that defendant's decision to eliminate her position was motivated, at least in part, by race or national origin. Defendant argues that plaintiff cannot establish a prima facie case because she has no evidence of intent to discriminate and it had a legitimate nondiscriminatory reason for terminating her employment.

The Court uses the familiar *McDonnell Douglas* framework to analyze plaintiff's discrimination claims. Under *McDonnell Douglas,* plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once plaintiff has established a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its employment action. *See id.* If

defendant makes this showing, plaintiff must then show that defendant's justification is pretextual. *See id.* at 804, 93 S.Ct. 1817.

 Generally, to establish a prima facie case of case of discrimination in termination from employment a plaintiff must establish that (1) she belonged to a protected group; (2) she was doing satisfactory work; (3) defendant terminated her employment; and (4) the position from which plaintiff was discharged was filled or remained available. *See, e.g., Amro v. Boeing Co.,* 232 F.3d 790, 797 (10th Cir. 2000).[9] The test is flexible, however, and plaintiff may show the fourth element with evidence that the termination occurred under circumstances that give rise to an inference of discrimination. *See id.* For purposes of summary judgment, defendant concedes that plaintiff can meet the first three elements. Defendant notes that plaintiff has not produced evidence that it replaced her with a non-protected employee. *See Carter v. Newman Mem'l County Hosp.,* 49 Fed.Appx. 243, 245 (10th Cir. 2002); *Beaird,* 145 F.3d at 1167 (plaintiff can show intent to discriminate by evidence that employer could have retained her but chose to retain non-protected employee); *see Branson v. Price River Coal Co.,* 853 F.2d 768, 771 (10th Cir.1988) (evidence that employer fired qualified minority employees but retained non-protected employees in similar positions sufficient to create rebuttable presumption of discriminatory intent). Such a showing is not,

---

**9.** In the context of a RIF, the discharged employee is not always replaced with another employee. Thus courts modify the test and require plaintiff to produce evidence that (1) she belongs to a protected group; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination. *See Hysten v. Burlington N. & Santa Fe R.W. Co.,* 296 F.3d 1177, 1181 (10th Cir.2002); *See Martin v. City*

*of Purcell,* 6 Fed.Appx. 792, 794 (10th Cir. 2001) (applying elements in age discrimination RIF case); *Beaird v. Seagate Tech. Inc.,* 145 F.3d 1159, 1165 (10th Cir.1998). In this case, plaintiff asserts that no actual RIF occurred. As set out in the Court's analysis, the record reflects a genuine issue of material fact whether defendant terminated plaintiff as part of a legitimate RIF. The Court therefore applies the more general test—which is not materially different in the context of this case.

however, required. *See Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1227–28 (10th Cir.2000); *Creason v. Seaboard Corp.*, 263 F.Supp.2d 1297, 1306–07 (D.Kan.2003) (plaintiff in RIF need only produce evidence from which factfinder could reasonably conclude that employer intended to discriminate). Plaintiff points to evidence that defendant distributed her human resources duties to two white employees.

■ The hurdle for plaintiff to set forth a prima facie case is not high. Here, plaintiff has presented evidence that she was performing her duties satisfactorily and that her position was one of two chosen for elimination during the first months of downsizing. The Court will presume for purposes of this analysis that she has produced some circumstantial evidence of discriminatory intent: defendant fired the only remaining African–American employee in the front office, and retained five non-minority employees in similar positions.

■ Assuming that plaintiff has set forth a prima facie case, the burden shifts to defendant to set forth a legitimate, non-discriminatory reason for plaintiff's termination. Defendant asserts that to save money, it decided to eliminate six positions, including those held by plaintiff and five Caucasians. If defendant terminated plaintiff's employment to save money, this would be a legitimate nondiscriminatory reason. *See, e.g., Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (courts should not second guess employers business judgment). Because defendant has met its burden, the presumption of discrimination drops from the case and plaintiff must establish by a preponderance of the evidence that "the proferred reason was not the true reason for the employment decision." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997); *see Rea v. Martin Marietta Corp.*,

29 F.3d 1450, 1455 (10th Cir.1994) (plaintiff may show pretext by establishing either that discriminatory reason more likely motivated defendant or that defendant's explanations are unworthy of credence). In the RIF context, courts typically consider three types of evidence to determine pretext: (1) evidence that the termination of the employee is inconsistent with the employer's criteria; (2) evidence that the employer's evaluation of the employee was falsified to cause termination; or (3) evidence that the RIF is more generally pretextual. *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir.2000). These typical methods do not foreclose the possibility of others. *Id.*

Plaintiff argues that the alleged RIF is a sham. She points out that although defendant eliminated the positions of five white employees, it eliminated four of these positions two to 11 months after it terminated her employment. Plaintiff also notes that between April of 2002 and January of 2003, defendant hired 43 employees and gave raises to 25 employees. Defendant responds that all of the new hires were to fill existing vacancies or were sales jobs paid entirely on commission. Moreover, between June 2002 and June 2003, defendant reduced its bi-monthly payroll from $67,785.46 to $54,985.32, and reduced the number of employees from 75 to 52.

Although defendant's figures are evidence that the RIF was not pretextual, they are not conclusive on this issue. This record in fact reveals very little about the purported RIF. The Court must examine defendant's intent as of June 18, 2002, when it terminated plaintiff's employment. While hindsight reveals that defendant terminated six employees between June 17, 2002 and May 10, 2003, and reduced its overall payroll and number of employees, the record is not very informative about Rishworth's thought

process on that date. For one thing, the record does not show that Rishworth decided to eliminate any specific number of positions over any specific period. Furthermore, while Rishworth apparently decided to eliminate positions which involved duties that remaining employees could most easily absorb, she apparently did not apply this criteria to plaintiff. Indeed, instead of deciding that front office employees could easily absorb plaintiff's job, she utilized the seemingly opposite reasoning that plaintiff could not perform the jobs of other front office employees since her background was primarily in human resources. Furthermore, the record shows nothing about how (or whether) Rishworth applied her alleged criteria to the Caucasian males whose positions were eliminated.

On this record a reasonable jury could conclude that defendant did not eliminate plaintiff's position on account of a RIF because on June 18, 2002, no RIF was actually in progress. A reasonable jury could also find that defendant's decisions to terminate Davis, Bonewits, Kelly and Gilliland were not part of a coherent RIF, but instead were independent and unrelated to each other and to plaintiff's termination.

■■■ Defendant points out that Rishworth fired plaintiff less than three months after she hired her. When the same person hires and fires an employee within a relatively short period of time, it raises a strong inference that discrimination is not a motivating factor. *See Herr v. Airborne Freight Corp.*, 130 F.3d 359, 363 (8th Cir. 1997) (unlikely that same supervisor would hire member of protected class only to discharge that employee within relatively short time). This is only an inference, however, and does not entitle defendant to summary judgment.

On the whole, plaintiff has shown a genuine issue of material fact whether defendant's stated nondiscriminatory reason for firing her—a RIF—is a pretext for discrimination. Defendant is not entitled to summary judgment on plaintiff's claims that defendant discriminated against her on the basis of her race and/or national origin.

## B. Back Pay And Front Pay

■■■ Defendant asserts that it is entitled to partial summary judgment on plaintiff's claims for back pay and front pay because it would have fired plaintiff when it learned that she had violated company policy by taking confidential records. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Under *McKennon,* if an employer learns of employee wrongdoing after it has fired that employee, and it can prove that the "wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge," the employee may not obtain front pay or reinstatement and in certain circumstances may also be denied back pay to which she would otherwise be entitled. *Id.* at 361–62, 115 S.Ct. 879. According to the Supreme Court, it would not comport with the "employer's legitimate concerns" to ignore evidence of misconduct on the part of the employee. *See id.* at 361, 115 S.Ct. 879.

In this case, defendant has presented evidence that plaintiff copied and took employee records for her own use in violation of company policy. Plaintiff does not deny that this conduct justified discharge, or that defendant would have terminated her because of it. Defendant has thus presented uncontroverted evidence of this defense.

■■■ The only question on this issue is when defendant learned of the plaintiff's wrongdoing. Defendant asserts that it first became aware of plaintiff's wrongdo-

ing on February 11, 2003, when it received the EEOC charge. Plaintiff asserts that defendant first became aware of it on October 31, 2003, when her counsel gave defendant certain employee evaluations, job postings and job applications, or in February of 2004, when her counsel gave defendant certain employee lists with rates of pay, review dates and handwritten notes. The question when defendant learned of plaintiff's wrongdoing is a question of fact which remains for trial.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 41) filed March 31, 2004 be and hereby is **SUSTAINED as to defendant's defense that plaintiff's removal of documents bars her claim for back pay and front pay from the date the defendant learned of her wrongful act.**

**IT IS FURTHER ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 41) filed March 31, 2004 be and hereby is **OTHERWISE OVERRULED.**

**IT IS FURTHER ORDERED** that *Plaintiff's Motion For Sanctions Against Defendant* (Doc. # 47) filed May 19, 2004 be and hereby is **OVERRULED.**