*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0879**

Penny Kandt,
Appellant,

vs.

Minnesota Department of Commerce, et al.,
Respondents.

**Filed January 30, 2017
Affirmed in part and reversed in part
Schellhas, Judge**

Ramsey County District Court
File No. 62-CV-14-4751

John E. Mack, Mack & Daby, P.A., New London, Minnesota (for appellant)

Lori Swanson, Attorney General, Eric V. Brown, Assistant Attorney General, St. Paul, Minnesota (for respondents)

Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Jesson, Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's summary-judgment dismissal of her sex- and age-discrimination claims and the sanctioning of her attorney. We affirm in part and reverse in part.

**FACTS**

Appellant Penny Kandt was an investigation supervisor with respondent Minnesota Department of Commerce (DOC) from 2006 to 2012. Kandt retired with benefits in September 2012 and with the understanding that the DOC would try to rehire her to work in a nonsupervisory role after 30 days. On October 15, 2012, DOC Director Robert Hernz rehired Kandt in a nonsupervisory position as an insurance-fraud specialist. Kandt's new position was conditioned on her receipt of positive performance reviews during a 12-month probationary period. In December 2012, two months into her new position, respondent Jonathan Ferris became Kandt's supervisor. Kandt alleges that, before she began working under Ferris, he had voiced his disagreement with the policy that allowed Kandt to return to work while receiving her retirement benefits.

After being rehired, Kandt struggled to adhere to DOC policy and satisfy the expectations of her position. In November 2012, on behalf of a coworker, Kandt knowingly and improperly signed a subpoena as an "Acting Director," although she was in fact a probationary fraud specialist, not a director. She later explained that she thought she could sign the subpoena in the interest of efficiency.

Kandt's position required her to timely and accurately complete reports on her investigations, as well as prepare evaluations and analysis of investigative leads of suspected insurance fraud, and to include all relevant information in her reports. Kandt failed to meet department expectations on six different occasions by the time of her mid-probationary review.

Kandt also had problems with her timesheets and notifying her supervisor about her absences. In April 2013, Kandt made a work-related call while on vacation. The call lasted approximately five minutes, yet Kandt submitted a timesheet claiming an hour of work for the call. When confronted by Ferris, Kandt admitted that the call did not last an hour and corrected her timesheet. Kandt also did not follow DOC policy that required employees to call in before the beginning of their shifts if they were going to arrive at work late. On three occasions, Kandt sent Ferris text messages after the start of her shift, informing him that she was running late or would not be coming in that day. On another occasion, Kandt failed to notify Ferris until late morning that she would be taking a sick day because of a familial incident the previous day.

Kandt also failed to wear her firearm in the office as required by DOC policy and attempted to justify her failure by explaining that her previous supervisors and other current supervisors did not enforce the firearm policy. She also asserted that women's clothing was not conducive to wearing guns in the office.

On May 3, 2013, Director Hernz informed Kandt by letter that she had not met the expectations of her probationary position and that she would not be certified for permanent employment. The DOC later filled Kandt's position with a woman in her thirties.

Kandt sued the DOC and Ferris for age- and sex-discrimination under the Minnesota Human Rights Act (MHRA). During discovery in May 2014, Kandt's attorney requested access to documents that contained the ages of other DOC employees. The DOC replied to the request ten days later, maintaining that the information is confidential under the Minnesota Government Data Practices Act and asserting that Kandt would need a

protective order from the district court. Kandt's attorney did not obtain a protective order and took no further action to obtain the requested information before the July 17, 2015 discovery deadline. Although the DOC sent Kandt a draft protective order, her attorney never responded.

The DOC moved the district court for summary judgment. In response, Kandt submitted an affidavit attempting to revisit the discovery request for employee age information. At the summary-judgment hearing on November 3, 2015, Kandt's counsel raised the discovery issue, claiming that he had sent a request by e-mail to the DOC in July 2015. Then he realized that he never sent the e-mail but attempted to argue the discovery issue to the district court, which interjected: "This court is not in the habit of handling discovery conferences on the fly, which is precisely what you are asking it to do, counsel. You had the opportunity to meet and confer, you are obligated to under the rules, and you chose not to." The court sanctioned Kandt's counsel $500 for his "fail[ure] to follow through." When Kandt's counsel attempted to address the sanction, the court declined to hear any argument on the grounds that counsel had "exhausted [his] time."

The district court subsequently allowed evidence regarding other DOC employees' ages to be included in the record. The court then granted the DOC's summary-judgment motion. This appeal follows.

## DECISION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as

4

a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, we review de novo whether any genuine issues of material fact exist and whether the district court misapplied the law. *Commerce Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *Id*. No genuine issue of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quotation omitted). A party opposing summary judgment "cannot rely upon mere general statements of fact but rather must demonstrate . . . that specific facts are in existence which create a genuine issue for trial." *Hunt v. IBM Mid Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn. 1986).

### Age-Discrimination Claim

Kandt argues that the district court erred in finding that no genuine fact issue exists regarding whether the DOC discharged her because of her age. Under the MHRA, to discharge a person because of her age or sex is an unfair employment practice. Minn. Stat. § 363A.08, subd. 2(2) (2016). Discriminatory intent may be proved by direct evidence or circumstantial evidence. *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 542 (Minn. 2001). Because Kandt provides no direct evidence of discriminatory intent, the *McDonnell Douglas* test applies and she has the burden of first establishing a prima facie case of discrimination. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)). This requires Kandt to show: "(1) she was a member of a protected class; (2) she was qualified for the position she held; (3) despite her qualifications, her employment was terminated; (4) a younger person was assigned to do

5

her work." *Ward v. Emp. Dev. Corp.*, 516 N.W.2d 198, 201 (Minn. App. 1994), *review denied* (Minn. July 8, 1994); *see also* Minn. Stat. § 363A.03, subd. 2 (2016) (providing that for employment-discrimination claims based on age the protected class is anyone over the age of majority). When a plaintiff demonstrates a prima facie case, "the burden of production shifts to the defendant who, in order to avoid summary judgment, must produce admissible evidence sufficient to allow a reasonable trier of fact to conclude that there was a legitimate, nondiscriminatory reason for the discharge." *Hoover*, 632 N.W.2d at 542. "If the defendant provides a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination disappears and the plaintiff has the burden of establishing that the employer's proffered reason is a pretext for discrimination." *Id.*

Kandt satisfies the first part of the *McDonnell Douglas* test because she has demonstrated a prima facie case of age discrimination. Kandt was a member of a protected class and was qualified for her position; her employment was terminated despite her qualifications; and she was replaced by a younger woman. But the DOC has met its burden under the second part of the test by providing legitimate, nondiscriminatory reasons for its actions, as follows: (1) Kandt failed to complete her work in a timely and sufficient manner; (2) Kandt failed to properly fill out her timesheet and give proper advance notice of her absences; (3) Kandt knowingly violated DOC policy by signing a subpoena as "Acting Director," when she was not a director; and (4) Kandt failed to follow the DOC's firearms policy. Because these legitimate and nondiscriminatory reasons for discharge are supported by the record, we conclude that DOC rebutted the presumption of discrimination.

6

Because the DOC rebutted the presumption of discrimination, Kandt has the burden of establishing that the DOC's proffered reasons are merely a pretext for discrimination. Kandt argues that a genuine issue of material fact exists about whether the DOC's stated reasons were merely a pretext for discrimination. An employee may demonstrate pretext "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986). But an employer is entitled to judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Hoover*, 632 N.W.2d at 546 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109 (2000)).

Kandt relies on an alleged statement by Ferris that the DOC had "finally gotten rid of all of the deadwood," which Kandt maintains was a reference to older employees in the DOC. We do not find the statement material or compelling for two reasons. First, the statement is inadmissible as evidence. The statement appears in the deposition of a DOC employee who testified that it was relayed to him through another employee who in turn overhead it from Ferris. The statement therefore contains multiple levels of inadmissible hearsay, Minn. R. Evid. 801, and inadmissible hearsay must be disregarded on summary judgment, *Murphy v. Country House, Inc.*, 307 Minn. 344, 349, 240 N.W.2d 507, 511 (1976). Second, even if the statement were admissible, we conclude that it does not show

7

that Ferris displayed animus toward older employees. In common usage, "deadwood" means "useless personnel or material." *Webster's Third New Int'l Dictionary* 580 (2002). Assuming that the statement was made, we conclude that it likely was made in criticism of the quality of certain employees' work, not their ages.

The DOC reasonably argues that pretext is not likely here because the same persons who hired Kandt fired her. *See Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362–63 (8th Cir. 1997) (recognizing an inference that discriminatory motives are not present if the same person hired and fired the employee). Director Hernz rehired Kandt with approval from the DOC commissioner's office. The persons who made the decision to rehire Kandt knew her age and knew that she had retired. Little if any likelihood exists that the persons hiring an employee with knowledge of her age would change course six months later and fire her for that reason. *See id.* at 363.

We conclude that Kandt failed to provide sufficient evidence that the DOC's reasons for terminating Kandt's employment were pretextual. The district court did not err by granting summary judgment for the DOC on Kandt's age-discrimination claim.

*Sex-Discrimination Claim*

Kandt also challenges the summary-judgment dismissal of her sex-discrimination claim. Because Kandt has not produced direct evidence of discriminatory intent, *McDonnell Douglas* applies and she has the burden of establishing a prima facie case of discrimination. *Hoover*, 632 N.W.2d at 542.

8

We conclude that Kandt cannot satisfy the fourth prong of the prima facie case. The DOC replaced Kandt with a woman—a member of the same protected class. *See id.* Because Kandt failed to establish a prima facie case of sex discrimination, the district court did not err by granting summary judgment for the DOC. *See Rademacher v. FMC Corp.*, 431 N.W.2d 879, 882 (Minn. App. 1988) ("If appellant fails to establish a prima facie case, summary judgment granted in favor of respondent is appropriate.").

## Sanctions

Kandt also challenges the district court's $500 sanction, arguing that the sanction must be reversed because she was given neither notice of the potential sanction nor the opportunity to respond. A party is entitled to notice of potential sanctions and the opportunity to respond. Minn. R. Civ. P. 11.03; Minn. Stat. § 549.211, subd. 3 (2016). We review the district court's imposition of sanctions for an abuse of discretion. *See In re Claims for No-Fault Benefits Against Progressive Ins. Co.*, 720 N.W.2d 865, 874 (Minn. App. 2006), *review denied* (Minn. Nov. 22, 2006).

The record here shows that, at the end of the summary-judgment hearing, the district court sua sponte raised the issue of sanctions and stated, "In this particular case, I think it is appropriate for the court to impose sanctions on the plaintiff for failing to follow through [with meeting and conferring on discovery]. And on my own motion, I am imposing $500.00 in sanctions to be paid to the state by the end of this week." The court provided Kandt no notice of the potential sanctions and no opportunity to respond. When Kandt's counsel attempted to respond to the imposition of the sanction, the court cut him off, stating that he had "exhausted [his] time." Because the court denied Kandt both notice of the

9

potential sanction and an opportunity to respond, we conclude that the district court abused

its discretion. We therefore reverse the sanction.

**Affirmed in part and reversed in part.**